UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTHONY LEONARDI, Plaintiff, | | |
| v. | : | 3:25-CV-1683 (SFR) |
| ROBERT T. GREENE, et al., Defendants. | | |

## INITIAL REVIEW ORDER

Anthony Leonardi, a an individual currently incarcerated at Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury"), filed this Complaint *pro se*, bringing claims under the Eighth Amendment and Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80 ("FTCA"). Leonardi sues defendants in their individual and official capacities, and he seeks monetary damages and injunctive and declaratory relief.

First, Leonardi brings claims under the Eighth Amendment and FTCA for alleged constitutional violations that occurred while he was incarcerated at the Federal Metropolitan Detention Center in Brooklyn, New York ("MDC Brooklyn") from October 2022 through July 2024. He asserts that physician's assistant Y. Joaquin ("PA Joaquin") and the Federal Bureau of Prisons ("BOP") were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment, and that PA Joaquin, the BOP, and the United States are liable for medical malpractice and intentional infliction of emotional distress.

Next, Leonardi brings claims under the Eighth Amendment and FTCA for alleged constitutional violations that occurred while he was incarcerated at FCI Danbury from July 2024 through at least October 6, 2025, the date he filed his Complaint. He alleges that Dr.

Robert Greene, Jr., physician's assistant Werner Escobar ("PA Escobar"), and the BOP were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment, and that Dr. Greene, PA Escobar, and the United States are liable for medical malpractice and intentional infliction of emotional distress.

For the reasons explained below, Leonardi's claims arising from his incarceration at MDC Brooklyn are severed as misjoined. Leonardi may proceed on his Eighth Amendment medical deliberate indifference claim against Dr. Greene and PA Escobar in their official capacities for injunctive relief and in their individual capacities for damages. He may pursue his FTCA claim for medical malpractice against the United States. The FTCA claim for intentional infliction of emotional distress is dismissed.

## I. FACTUAL BACKGROUND

I accept as true the following well-pleaded facts in the Complaint. The events set forth in the Complaint occurred while Leonardi was incarcerated at MDC Brooklyn and FCI Danbury. *See* Compl., ECF No. 1.

### A. MDC Brooklyn

On October 12, 2022, while housed at MDC Brooklyn, Leonardi slipped on a wet concrete floor while coming out of the shower. Compl. ¶¶ 9-11. On November 21, 2022, Leonardi was seen by MDC Brooklyn medical staff, including PA Joaquin, and informed the medical staff that he had fallen five weeks earlier and was having pain when sitting down or having bowel movements. *Id.* ¶¶ 13-15. PA Joaquin documented the fall, and BOP medical staff and PA Joaquin provided Leonardi with ibuprofen for pain management and told Leonardi that an x-ray of his coccyx would be conducted in the future. *Id.* ¶¶ 9, 12, 16-17.

An x-ray was performed on March 31, 2023, and on April 3, 2023, PA Joaquin and BOP medical staff informed Leonardi that the x-ray results showed a fracture in his third coccyx vertebra. *Id.* ¶¶ 18-23. The day he received the x-ray results, Leonardi requested a refill of ibuprofen to treat his pain, and PA Joaquin and MDC Health Services told Leonardi they would provide him with a donut pillow seat cushion. *Id.* ¶¶ 23, 25. On April 26, 2023, Leonardi sent PA Joaquin and MDC Brooklyn Health Services a message, stating that the pain in his tailbone kept "feeling worse and worse" and requesting help and the "donut for sitting," which he had not yet received. *Id.* ¶ 24. Leonardi followed up on his request for the donut pillow and another refill of ibuprofen on May 9, 2023. *Id.* ¶ 26. At some point prior to July 23, 2024, Leonardi finally received a donut cushion. *Id.* ¶ 27.

In July 2024, the BOP transferred Leonardi from MDC Brooklyn to FCI Danbury. *Id.* ¶ 28. Leonardi was not allowed to take the donut cushion with him to FCI Danbury nor to utilize a donut cushion during transport. *Id.* ¶¶ 31-32.

**B. FCI Danbury**

After Leonardi had been transferred to FCI Danbury, he sent a message on July 23, 2024, to Dr. Greene and PA Escobar (collectively, the "Medical Defendants"), and the FCI Danbury Health Services ("Danbury HS"), requesting different medication for his chronic back pain from the fall at MDC Brooklyn. *Id.* ¶ 34. On July 27, 2024, Leonardi sent a message to Danbury HS and the Medical Defendants "explaining that his tailbone pain was severe and requesting medication." *Id.* ¶ 35. On August 18, 2024, Leonardi sent a message to Danbury HS and the Medical Defendants "explaining that he was experiencing sharp pain in his back during bowel movement and explained that his left leg repeatedly gets numb." *Id.* ¶ 36.

On August 26, 2024, Leonardi sent a message to Danbury HS and the Medical Defendants "requesting medication for his severe back pain." *Id.* ¶ 37. The message stated, in part, that Leonardi was provided a donut cushion when at MDC Brooklyn but was not allowed to bring the cushion to FCI Danbury, that he fractured his tailbone in 2022 due to a slip and fall, that he was in "severe pain when moving certain ways" and "during bowels movements," and that "the pain was similar to being stabbed." *Id.* In that message, Leonardi requested a donut cushion. *Id.*

On August 29, 2024, Leonardi sent a message to Danbury HS and the Medical Defendants explaining that aspirin was ineffective in treating his pain, requesting a donut cushion, and requesting to be seen by medical staff to manage his severe back pain. *Id.* ¶ 38. On August 31, 2024, Leonardi sent a message to Danbury HS and the Medical Defendants requesting medication for his back pain, a donut cushion, and explaining that all his prior messages had been ignored. *Id.* ¶ 39. On September 5, 2024, Leonardi once again sent a message to Danbury HS and the Medical Defendants requesting pain medication for his severe back pain, *id.* ¶ 40, and on September 11, 2024, Leonardi sent another message requesting medication for his back pain and explaining that aspirin and ibuprofen were ineffective in managing the pain, *id.* ¶ 41.

On September 22, 2024, Leonardi sent a message to Danbury HS and the Medical Defendants explaining that he was told to report to Danbury HS to pick up a donut cushion, but when he arrived no one knew what he was talking about. *Id.* ¶ 42. On November 19, 2024, Leonardi sent a message to Danbury HS and the Medical Defendants explaining that he finally received the inflatable donut cushion, but without anything to inflate it, and had gone to Danbury HS multiple times but received no assistance. *Id.* ¶ 44.

On March 19, 2025, Leonardi sent a message to Danbury HS and the Medical Defendants explaining that he had been told six months prior that he would see a spine surgeon, but no appointment had occurred. *Id.* ¶ 45. Leonardi explained that he was in constant pain, that the inflatable donut broke two days after using it, and requested to see Danbury HS to address the issues "ASAP." *Id.* On March 21, 2025, Leonardi sent a message to Danbury HS and the Medical Defendants inquiring as to the status of an appointment with a spine surgeon, explaining that he was in constant severe pain and begging for medical care. *Id.* ¶ 46. On June 28, 2025, Leonardi sent another message inquiring as to the status of an appointment with a spine surgeon and explaining that he was in severe pain during bowel movements. *Id.* ¶ 47. On July 2, 2025, Leonardi once again sent a message inquiring as to the status of a spine surgeon appointment and explaining that he had been in pain for several years and that bowel movements were very painful. *Id.* ¶ 48.

Finally, on August 11, 2025, Leonardi sent a message to Danbury HS and the Medical Defendants explaining that he was still being ignored by Danbury HS staff regarding his back pain, inquiring as to the status of a spine surgeon appointment, and explaining "that he had been complaining about his legs going numb for months and that he had complained about his back pain 'countless times.'" *Id.* ¶ 49.

Leonardi informed Danbury HS and the Medical Defendants "that he had fully exhausted his administrative remedies and was still not receiving adequate care for his spinal injury." *Id.* Leonardi remains in constant severe pain from his spinal injury and continues to have severe pain during bowel movements. *Id.* ¶¶ 50-51.

## II. LEGAL STANDARD

I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a)-(b). In doing so, I must assume the truth of the allegations and interpret them liberally to "raise the strongest arguments [they] suggest." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

I have thoroughly reviewed all factual allegations in the Complaint and conducted an initial review of the allegations under 28 U.S.C. § 1915A. Based on this initial review, I order as follows.

## III. DISCUSSION

Leonardi sues multiple defendants at the two separate facilities under the Eighth Amendment and FTCA. Before determining whether Leonardi has alleged any plausible claims, I first consider whether Leonardi has properly joined his claims against the individual defendants named in this action under Federal Rule of Civil Procedure 20.

### A. Misjoinder and Severance

"Rule 20 permits joinder of multiple defendants if 'any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same

transaction, occurrence, or series of transactions and occurrences' and 'any questions of law or fact common to all defendants will arise in the action.'" *Harnage v. Lightner*, 916 F.3d 138, 142 (2d Cir. 2019) (quoting Fed. R. Civ. P. 20(a)(2)). The court may "drop a party" or "sever any claim against a party" whom it finds to be improperly joined. Fed. R. Civ. P. 21.

With respect to the first requirement of Rule 20(a), what constitutes the same "transaction" or "occurrence" is approached on a case-by-case basis. *Dixon v. Scott Fetzer Co.*, 317 F.R.D. 329, 331 (D. Conn. 2016). Whether claims arise out of the same transaction depends on the logical relationship between the claims and whether the "essential facts" of the claims "are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978). The same transaction requirement "means that there must be some allegation that the joined defendants conspired or acted jointly." *Arista Records LLC v. Does 1-4*, 589 F. Supp. 2d 151, 154 (D. Conn. 2008) (citation modified).

The second requirement—that a question of law or fact common to all defendants will arise in the action—is met where "the court finds that there is 'substantial' overlap in questions of law or fact across the claims." *Ardolf v. Weber*, 332 F.R.D. 467, 479 (S.D.N.Y. 2019). The mere fact that the same constitutional provisions or statutes may be at issue in two or more claims is not enough to render the claims sufficiently related for purposes of joinder; rather, where a plaintiff's claims under the same constitutional or statutory framework "arise from different circumstances and would require separate analyses," the claims are not logically related. *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 264 (D. Conn. 2012).

In deciding whether to sever a claim for misjoinder, I consider whether "(1) the claims arise out of the same transaction or occurrence; (2) the claims present some common question

of law or fact; (3) [] settlement of the claims or judicial economy would be facilitated; (4) prejudice would be avoided; and (5) different witnesses and documentary proof are required for the separate claims." *Id.* at 263.

Here, the named defendants at MDC Brooklyn and the named defendants at FCI Danbury were involved in different alleged incidents, at different facilities, during different months and years, such that Leonardi's MDC Brooklyn claims do not arise from the same occurrences or series as his FCI Danbury claims. In addition, judicial economy would not be facilitated by retaining claims of deliberate indifference and negligence arising at separate facilities in a single action because this would require discovery of different sets of evidence and separate proofs at trial. Further, settlement negotiations would also be hindered by having to consider several distinct claims involving separate facts and legal theories. "Generally, district courts have concluded in similar circumstances that inclusion of such unrelated claims in one complaint constitutes improper joinder of defendants in violation of Rule 20(a)(2)." *Cook v. Williams*, No. 25-CV-1029 (SFR), 2026 WL 221808, at *5 (D. Conn. Jan. 28, 2026) (severing deliberate indifference claims "brought against defendants arising at different times and at different facilities" as improperly joined) (citation modified).

I conclude that Leonardi's claims brought against defendants arising at different times and at different facilities are improperly joined under Rule 20 and must be severed under Rule 21. *See, e.g.*, *Ibbison v. Quiros*, No. 22-CV-1163 (SVN), 2023 WL 1766440, at *8 (D. Conn. Feb. 3, 2023) (concluding that plaintiff's "claims relate to different time periods, different incidents, and, for the most part, different Defendants" and thus were improperly joined under Rule 20 and had to be severed and dismissed under Rule 21). Thus, I sever as misjoined all claims against PA Joaquin, the BOP, and the United States pertaining to events that

occurred while Leonardi was housed at MDC Brooklyn. If Leonardi wishes to proceed with his FTCA and Eighth Amendment claims arising from events that occurred while he was housed at MDC Brooklyn, Leonardi shall do so in a separate action.[1]

**B. Federal Claims against the FCI Danbury Defendants**

I now address whether Leonardi has named the proper defendants and whether he may sue those defendants in their individual and/or official capacities for his Eighth Amendment and FTCA claims arising from events that occurred while he was incarcerated at FCI Danbury.

---

[1] The proper venue for an FTCA claim is "the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). "For all venue purposes . . . a natural person . . . shall be deemed to reside in the judicial district in which that person is domiciled . . . ." 28 U.S.C.A. § 1391(c)(1). "When a plaintiff is incarcerated, for venue purposes, there is a presumption that he retains his pre-incarceration domicile rather than establishing a new domicile based on the location of his current incarceration." *Morales v. United States,* No. 22-CV-7021 (LTS), 2022 WL 6803106, at *1 (S.D.N.Y. Sept. 19, 2022). According to a court order, Leonardi pleaded guilty to conspiracy to distribute Narcotics in the Eastern District of New York and had resided at his home in Suffolk County prior to his conviction. *See Leonardi v. United States*, No. 21-CR-0452 (JS), 2026 WL 457085, at *4 n.8 (E.D.N.Y. Feb. 18, 2026). Because Leonardi resided in the Eastern District of New York prior to his incarceration and the acts or omissions giving rise to Leonardi's claims occurred at MDC Brooklyn, which "lies within the Eastern District of New York," *Flores v. United States*, No. 24-CV-6123 (LTS), 2024 WL 4150338, at *1 (S.D.N.Y. Aug. 16, 2024), Leonardi is cautioned that this District does not appear to be the proper venue for his MDC Brooklyn FTCA claim.

For an Eighth Amendment claim, courts apply the general venue statute, which provides, in relevant part, that a civil action may be brought in a judicial district where: (1) "any defendant resides, if all defendants are residents of the State in which the district is located"; or (2) "a substantial part of the events or omissions giving rise to the claim occurred." *See* 28 U.S.C. § 1391(b). Because the events giving rise to Leonardi's claims occurred while he was incarcerated at MDC Brooklyn and Defendant PA Joaquin was an employee at MDC Brooklyn, this District does not appear to be a proper venue for Leonardi's MDC Brooklyn Eighth Amendment claim. *See Flores*, 2024 WL 4150338, at *1 (transferring case to Eastern District of New York because the underlying events occurred at MDC Brooklyn, where most defendants appeared to have resided).

**1. Proper Defendants**

Leonardi has named the BOP, Dr. Greene, and PA Escobar as defendants in his Eighth Amendment claim. Compl. ¶ 79. Claims for monetary damages for violations of a plaintiff's constitutional rights are called *Bivens* claims. *See, e.g.*, *Pimentel v. Deboo*, 411 F. Supp. 2d 118, 125 (D. Conn. 2006). As an initial matter, I dismiss Leonardi's Eighth Amendment claim under *Bivens* against the BOP and against Dr. Greene and PA Escobar in their official capacities. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("[A] prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP."); *Deboo*, 411 F. Supp. 2d at 125 ("Under *Bivens*, [a plaintiff] may seek damages against defendants acting in their individual capacities . . . [t]he only relief available in a *Bivens* action is an award of damages from the defendant.").

Leonardi names as defendants Dr. Greene, PA Escobar, and the BOP, as well as the United States in his FTCA claims. The FTCA prohibits a government agency and government employees from being sued in their own names. *See* 28 U.S.C. § 2679(a)-(b). The United States "is the only proper party in a suit seeking monetary damages for torts committed by federal employees." *Whylie v. Baird*, No. 3:12-CV-1318 (AWT), 2012 WL 6726563, at *3 (D. Conn. Dec. 26, 2012). As such, I dismiss Dr. Greene, PA Escobar, and the BOP as defendants in Leonardi's FTCA claims. *See Carno v. United States*, No. 17-CV-7998 (NSR), 2019 WL 2287966, at *7 (S.D.N.Y. May 28, 2019) (dismissing all FTCA claims against the BOP and the BOP Acting Director as improper defendants because the United States is the only proper party in FTCA claims).

I first address Leonardi's *Bivens* claims under the Eighth Amendment against Dr. Greene and PA Escobar.

### 2. Eighth Amendment *Bivens* Claims

Leonardi asserts *Bivens* claims against Dr. Greene and PA Escobar in their individual capacities for deliberate indifference to Leonardi's medical needs in violation of the Eighth Amendment. To state a claim for relief under *Bivens*, a plaintiff must allege facts that plausibly show that: (1) the challenged action was attributable to an officer acting under color of federal law, and (2) such conduct deprived him of a right, privilege, or immunity secured by the Constitution. *See Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006) (citing *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971)).

Not all constitutional violations give rise to a damages remedy under *Bivens*. The Supreme Court has recognized a remedy for damages in only three contexts: (1) a Fourth Amendment search and seizure suit against federal narcotics officers (*Bivens*); (2) a Fifth Amendment due process suit against a congressman-employer on the grounds of gender discrimination (*Davis v. Passman*, 442 U.S. 228 (1979)); and (3) an Eighth Amendment cruel and unusual punishment suit against federal jailers for failure to provide adequate medical treatment (*Carlson v. Green*, 446 U.S. 14 (1980)). *See Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017).

To determine whether a plaintiff's claim may proceed under *Bivens*, the Court must conduct a two-step analysis. *Egbert v. Boule*, 596 U.S. 482, 492 (2022). The first step asks, "whether the case presents a new *Bivens* context—*i.e.*, is it meaningfully different from the three cases in which the Court has implied a damages action." *Id.* (citation modified). If a case arises in a "new *Bivens* context," the Court proceeds to the second step, where it considers "whether there are any special factors that counsel hesitation about granting the extension" of *Bivens* into a new context. *Hernández v. Mesa*, 589 U.S. 93, 102 (2020) (citation modified).

For purposes of initial review, I find that the circumstances alleged in Leonardi's Complaint are sufficiently similar in the circumstances at issue in *Carlson* such that Leonardi's claim does not arise in a new *Bivens* context. *Churuk v. Canarozzi*, No. 22-CV-1395 (VDO), 2024 WL 2149036, at *10-11 (D. Conn. Apr. 2, 2024) (denying motion to dismiss *Bivens* claim asserting "that defendants Greene and Escobar were deliberately indifferent to [plaintiff's] medical needs when they failed to restore his prescription for Gabapentin," finding that "this claim strongly resembles the claim in *Carlson*" because "Plaintiff is claiming deliberate indifference to medical needs by medical providers"). Accordingly, I now consider whether Leonardi's allegations are sufficient to state an Eighth Amendment deliberate indifference claim.

The Supreme Court has held that deliberate indifference by prison officials to a plaintiff's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). There is a subjective and objective component to an Eighth Amendment deliberate indifference claim. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006), *abrogated on other grounds as recognized by Kravitz v. Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023).

To establish the objective component of an Eighth Amendment deliberate indifference claim, the alleged deprivation of medical care must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The plaintiff must "show that he was actually deprived of adequate medical care by an official's failure to take reasonable measures in response to a sufficiently serious medical condition." *Thomas v. Wolf*, 832 F. App'x 90, 92 (2d Cir. 2020) (summary order) (citation modified).

The objective showing requires a court to make two inquiries. *See Salahuddin*, 467 F.3d at 279. First, I must determine whether the plaintiff was "actually deprived of adequate medical care." *Id.* A "prison official's duty is only to provide reasonable care," so "prison officials who act reasonably in response to an inmate-health risk cannot be found liable under the Cruel and Unusual Punishments Clause." *Id.* at 279-80 (citation modified). Second, I must determine "whether the inadequacy in medical care is sufficiently serious," which requires examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the [plaintiff]." *Id.* at 280. This will differ based on whether the issue is failure to provide *any* medical treatment, inadequate treatment, or delayed treatment. *See Smith v. Carpenter*, 316 F.3d 178, 184-86 (2d Cir. 2003). This inquiry is "necessarily contextual," "fact-specific," and "must be tailored to the specific circumstances of each case." *Id.* at 185 (citation modified).

"[I]f the unreasonable medical care is a failure to provide any treatment for [a plaintiff's] medical condition, courts examine whether the [plaintiff's] medical condition is sufficiently serious." *Salahuddin*, 467 F.3d at 280. Deciding whether a condition is sufficiently serious requires courts to consider whether "a reasonable doctor or patient would find it important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." *Id.* (citation modified). A medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000).

If treatment is given but the plaintiff alleges it is inadequate, "the seriousness inquiry is narrower." *Salahuddin*, 467 F.3d at 280. I then focus on the "inadequacy itself." *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018) (summary order). If "the basis for a [plaintiff's] Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* . . . rather than the [plaintiff's] *underlying medical condition* alone" to determine whether the deprivation is objectively sufficiently serious. *Smith*, 316 F.3d at 185 (emphasis in original).

To satisfy the subjective component of an Eighth Amendment deliberate indifference claim, a defendant must have been actually aware of a substantial risk that the plaintiff would suffer serious harm because of the defendant's actions or inactions. *See Salahuddin*, 467 F.3d at 280. Deliberate indifference is more than mere negligence—it is equivalent to "criminal recklessness," where an individual "disregards a risk of harm of which he is aware." *Farmer v. Brennan*, 511 U.S. 825, 837, 839-40 (1994). In general, medical malpractice does not equate to deliberate indifference. *Estelle*, 429 U.S. at 106. Medical malpractice, may, however, rise to deliberate indifference if it "involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (citation modified). "The reckless official need not desire to cause such harm or be aware that such harm will surely or almost certainly result. Rather, proof of awareness of a substantial risk of the harm suffices." *Salahuddin*, 467 F.3d at 280. "Although *Farmer* requires that a plaintiff prove actual knowledge of a risk, evidence that the risk was obvious or otherwise must have been known to a defendant is sufficient to permit a jury to conclude that the defendant was actually aware of it." *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003) (citing *Farmer*, 511 U.S. at 842);

*Hope v. Pelzer*, 536 U.S. 730, 738 (2002) ("We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious.").

Applying these principles here, I first consider whether Leonardi's allegations concerning Dr. Greene's and PA Escobar's failure to provide adequate care for his severe spinal condition meets the objective component. *See Smith*, 316 F.3d at 185. Leonardi alleges that from July 23, 2024, through August 11, 2025, he sent at least fifteen messages to the Danbury HS, Dr. Greene, and PA Escobar describing his severe back pain and severe pain during bowel movements and the numbness in his legs he was experiencing. *See* Compl. ¶¶ 34-49. In the messages, Leonardi also stated that ibuprofen had not been working to alleviate the severe pain, and he requested medication for the pain, a donut cushion, and/or to see a spine surgeon, or at the very least, adequate care for his spinal injury. *Id.* Leonardi further alleges that he remains in constant severe pain and continues to have severe pain during bowel movements. *Id.* ¶¶ 50-51.

For purposes of initial review, these allegations suggest Leonardi has a sufficiently serious medical need and Dr. Greene and PA Escobar failed to provide medical care, or failed to provide Leonardi with adequate care, because Leonardi's spinal condition continued to deteriorate. *See Valdiviezo*, 752 F. App'x at 32 (medical care was inadequate where "it could have resulted in more serious injury"); *Johnson v. Greene*, No. 25-CV-1617 (KAD), 2025 WL 3539184, at *4 (D. Conn. Dec. 10, 2025) (concluding plaintiff satisfied objective component of Eighth Amendment *Bivens* claim where plaintiff alleged that defendant observed labored breathing and fluid in his lungs, but only treated him with Tylenol, and thus plaintiff contracted severe pneumonia). Leonardi's allegations related to his spinal condition satisfy the objective component.

I also conclude that Leonardi's allegations meet the subjective component. Here, Leonardi does not explicitly allege that Dr. Greene and Escobar received his messages. However, given the fact that Leonardi alleges that he sent the Danbury HS, Dr. Greene, and PA Escobar at least fifteen messages over the course of a year regarding the severe pain he was experiencing and the need for treatment, for purposes of initial review, these allegations are sufficient to raise an inference that Dr. Green and PA Escobar were aware of Leonardi's medical condition.

Next, it is also well-established that an incarcerated person does not have a right to the medical treatment of his or her choice. *See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment.") (citation modified); *Chance*, 143 F.3d at 703 ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."). But Dr. Greene's and PA Escobar's failure to provide Leonardi with a donut cushion that worked for more than two days, adequate pain management, or further treatment to alleviate the severe pain he experienced from his spinal injury over the course of over a year, plausibly alleges that Dr. Greene and PA Escobar "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Brock*, 315 F.3d at 164. Thus, Leonardi may proceed with his *Bivens* claim for damages against Dr. Greene and PA Escobar for Eighth Amendment deliberate indifference to his medical needs.

I next consider Leonardi's claims for injunctive relief under the Eighth Amendment.

**3. Eighth Amendment Injunctive Relief**

Leonardi seeks injunctive relief under the Eighth Amendment and requests that this Court bar the BOP, Dr. Greene, and PA Escobar "from any further negligence, mistreatment of, or delaying the adequate treatment of [his] spinal injury." Compl. ¶ 80(c).[2]

As a general rule, sovereign immunity prevents the United States from being sued without its consent. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983). Under the so-called *Larson-Dugan* exception, however, "suits for specific relief against officers of the sovereign allegedly acting beyond statutory authority or unconstitutionally are not barred by sovereign immunity." *Pollack v. Hogan*, 703 F.3d 117, 120 (D.C. Cir. 2012) (citation modified).

Thus, federal courts may, under their equitable powers, enjoin federal officials from unconstitutional action. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326-27 (2015) (explaining that the Supreme Court has "long held that federal courts may in some circumstances grant injunctive relief against state officers who are violating, or planning to violate, federal law" and "that has been true not only with respect to violations of federal law by state officials, but also with respect to violations of federal law by federal officials"); *see also Sanders v. Crampton, et al.*, No. 3:26-CV-718 (VAB), 2026 WL 3093495 (D. Conn. Oct.

[2] Leonardi also seeks declaratory relief stating that Defendants violated his Eighth Amendment rights. Compl. ¶ 80(b). Were Leonardi to "prevail on any constitutional claim proceeding in this action, a judgment in his favor would serve the same purpose as a declaration that Defendants violated his constitutional rights." *Petion v. Pearson*, No. 3:22-cv-1647 (OAW), 2023 WL 6050054, at *4 (D. Conn. Sept. 15, 2023). Accordingly, Leonardi's request for declaratory relief is dismissed. *See Pennyman v. Caruso*, No. 3:26-cv-00147 (SVN), 2026 WL 1786429, at *4 (D. Conn. June 22, 2026) (citing *Petion* to conclude that "dismissal of Plaintiff's declaratory judgment request is warranted because the declaratory relief he seeks is duplicative of his other causes of action").

16, 2026) (stating that courts "have held that sovereign immunity does not bar a suit for injunctive or declaratory relief against a federal officer for an *ultra vires* act") (citation modified); *Hinton v. United States*, No. 3:24-CV-01944 (KAD), 2025 WL 2576371, at *6 (D. Conn. Sept. 5, 2025) (stating that "sovereign immunity does not bar claims brought against federal officials in their *official capacities* for injunctive relief") (citation modified); *Crespo v. Hurwitz*, No. 17-CV-6329 (RRM) (PK), 2020 WL 7249591, at *21 (E.D.N.Y. May 17, 2020) (collecting cases where courts have "found that sovereign immunity does not prevent prisoners from seeking injunctive relief against federal officials to enforce their Eighth Amendment rights"), *report and recommendation adopted*, No. 17-CV-6329 (RRM) (PK), 2020 WL 7021658 (E.D.N.Y. Nov. 30, 2020). As explained above, I find that Leonardi has plausibly alleged a violation of the Eighth Amendment with respect to the quality of his medical care. Accordingly, Leonardi may proceed against Dr. Greene and PA Escobar in their official capacities for injunctive relief.[3]

In addition, the Court could construe Leonardi's claim under the Eighth Amendment as a habeas petition under 28 U.S.C. § 2241. The Second Circuit "has long interpreted § 2241

[3] I dismiss Leonardi's claim for injunctive relief against BOP. While federal courts may award injunctive relief against federal *officials* under their equitable powers, the authority to award injunctive relief against federal *agencies* arises from the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 702. Under the APA, however, a court may only review agency action "for which there is no other adequate remedy in a court." *Id.* § 704. Because, as I explain in the following paragraph, Leonardi may bring a challenge to the conditions of his confinement under the federal habeas statute, I must dismiss his claim for injunctive relief against BOP. *See Lucas v. Fed. Bureau of Prisons*, No. 17-CV-1184 (VB), 2018 WL 3038496, at *2 (S.D.N.Y. June 19, 2018) ("Accordingly, because plaintiff could adequately remedy his conditions of confinement claim in a habeas corpus petition, the Court does not have jurisdiction to decide his APA claim."); *see also Sabir v. Williams*, No. 3:20-CV-0008 (VAB), 2020 WL 3489522, at *7 (D. Conn. June 26, 2020) ("A court may not even entertain the claim against the agency if the plaintiff has an adequate alternative legal remedy against someone else.") (citation modified).

as applying to challenges to the execution of a federal sentence, including such matters as the administration of parole, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008) (citation modified). A plaintiff's "claim that she is receiving constitutionally inadequate medical care is cognizable under § 2241." *Ilina v. Zickefoose*, 591 F. Supp. 2d 145, 150 (D. Conn. 2008); *see also Choinski*, 525 F.3d at 210 ("[T]he district court erred in the belief that a claim for habeas corpus may not be joined in the same pleading with a civil rights claim."); *Sanders*, 2026 WL 3093495, at *5 (construing plaintiff's action relating to conditions of confinement at FCI Danbury as seeking habeas relief under § 2241 as well as "seeking injunctive relief against Defendants under the federal court's equitable power to enjoin ongoing violation of federal law").

The proper respondent for a § 2241 petition brought by a prisoner is the warden of the facility where the prisoner is held. Accordingly, if Leonardi seeks to name the Warden of FCI Danbury as respondent and pursue relief from unconstitutional conditions of confinement through a § 2241 petition, he shall file a notice with the Court on or before November 26, 2026.

**4. FTCA Claim Against United States**

I have dismissed the BOP, Dr. Greene, and PA Escobar as defendants with respect to Leonardi's FTCA claim, so the only remaining defendant is the United States. Under the FTCA, Leonardi brings claims for medical malpractice, inadequate medical care, and intentional infliction of emotional distress. *See* Compl. ¶¶ 81-97.

Relief under the FTCA is restricted to money damages. *See* 28 U.S.C. § 1346(b)(1) (allowing suits for money damages only); *Diaz–Bernal v. Myers,* 758 F. Supp. 2d 106, 117 n.

5, 118 n.6 (D. Conn. 2010). Thus, to the extent Leonardi asserts claims for injunctive and declaratory relief under the FTCA, I dismiss those claims.

The FTCA waives the federal government's sovereign immunity to tort suits for money damages for:

> [P]ersonal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1); *Dominy v. United States*, No. 25-CV-1279 (LTS), 2025 WL 1519113, at *1 (S.D.N.Y. May 27, 2025) ("The FTCA provides for a waiver of sovereign immunity for certain claims for damages arising from the tortious conduct of federal officers or employees acting within the scope of their office or employment."). Claims based on the negligent or wrongful acts or omissions of federal employees must be brought under the FTCA. *See* 28 U.S.C. § 2679(b)(1) (claim against the United States under the FTCA is exclusive remedy for tort claims against federal employee); *see also Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994) ("[A] claimant's exclusive remedy for non-constitutional torts by a government employee acting within the scope of his employment is a suit against the government under the FTCA.") (citation modified).

Before a district court has subject matter jurisdiction over an FTCA claim, the plaintiff must have exhausted his administrative remedies by presenting the claim to the appropriate federal agency. 28 U.S.C. § 2675(a). Section 2675(a) provides, in relevant part, that:

> An action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is

> filed shall . . . be deemed a final denial of the claim for purposes of this section.

*Id.* Presentation requires that a claimant submit written notice to the agency and that the notice must provide "sufficiently specific information as to the basis of the claim, the nature of claimant's injuries, and the amount of damages sought such that the agency can reasonably understand what it must investigate to determine liability, to value the claim, and to assess the advisability of settlement." *Collins v. United States*, 996 F.3d 102, 119 (2d Cir. 2021). "The burden is on the plaintiff to both plead and prove compliance with the FTCA's statutory requirements, including exhaustion," and "[i]n the absence of such compliance, a district court has no subject matter jurisdiction over the plaintiff's claim." *Manchanda v. Lewis*, No. 21-1088, 2021 WL 5986877, at *2 (2d Cir. Dec. 17, 2021) (summary order) (citation modified). This requirement is jurisdictional and cannot be waived. *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005).

**a. Medical Malpractice/Negligence**

As an initial matter, I construe Leonardi's claims for inadequate medical care and medical malpractice as one claim. Leonardi's allegations satisfy the requirements for a plausible FTCA claim sounding in medical malpractice or negligence. Leonardi alleges that Dr. Greene and PA Escobar were acting within the scope of their employment when they deviated from the standard of medical care by repeatedly failing to address Leonardi's injury or refer him to someone who could properly treat his condition despite their awareness of his serious spinal injury. Compl. ¶¶ 82-85. Leonardi claims that as a direct and proximate result of the medical malpractice and negligence of Dr. Greene and PA Escobar, he suffered severe pain and additional injury to his spine, such as severe pain during bowel movements and when

sitting. *Id.* ¶¶ 84, 86.

Leonardi also alleges that he has fully exhausted his administrative remedies, *id.* ¶ 49, and he has attached exhibits to his Complaint containing administrative remedies that he has filed, *see* ECF No. 1-1. Where Leonardi states that he exhausted his administrative remedies, it is not clear whether he is referring to his B-9 Administrative Remedy Request for treatment and ensuing appeal, *id.* at 79-85, or the Administrative Claim for Damage, Injury, or Death that he submitted to the BOP, *id.* at 55-67.

Even so, in the Administrative Claim that Leonardi submitted to the BOP, he addresses his slip and fall and medical treatment at MDC Brooklyn, as well as his inadequate medical treatment at FCI Danbury. *Id.* Specifically, Leonardi stated that "[i]n the nearly 3 years since that fall, the BOP has not provided me with adequate medical care." *Id.* at 55. Leonardi also stated:

> I sent numerous electronic messages to FCI Danbury Health Services regarding the pain I was in for months before I was finally seen by medical staff. . . . Around this time, FCI Danbury stated that I would be seen by a spine surgeon. As of July 2025, I have not had any surgery scheduled and I remain in pain, especially when sitting or having a bowel movement. The BOP has mismanaged my medical care and it has caused me to remain in pain for nearly 3 years.

*Id.* at 57. Moreover, Leonardi received a response to his Administrative Claim from the Northeast Regional Office of the Federal Bureau of Prisons, even though the response solely addressed Leonardi's claim regarding his slip and fall and medical treatment at MDC Brooklyn. *Id.* at 58. Because Leonardi submitted an Administrative Claim in regard to his medical treatment while at FCI Danbury, for purposes of initial review, I will presume Leonardi has exhausted his administrative remedies pertaining to his medical malpractice claim in accordance with 28 U.S.C. § 2675(a). Thus, Leonardi may proceed on his medical

malpractice claim under the FTCA for damages against the United States.[4]

**b. Intentional Infliction of Emotional Distress**

Leonardi also brings a claim under the FTCA for intentional infliction of emotional distress. Under Connecticut law, intentional infliction of emotional distress has four elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Watts v. Chittenden*, 301 Conn. 575, 586 (2011) (citation modified). To rise to the level of extreme and outrageous, a defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Appleton v. Bd. of Educ.*, 254 Conn. 205, 210-11 (2000) (citation modified). "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Id.* at 211 (citation modified). Rather, the conduct must be "of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *DeLaurentis v. City of New Haven*, 220 Conn. 225, 267 (1991) (citation modified).

Here, Leonardi has provided no indication that he exhausted his administrative remedies in accordance with 28 U.S.C. § 2675(a) with respect to his claim of intentional

[4] The United States is free to challenge Leonardi's allegations regarding the purported exhaustion of his administrative remedies.

infliction of emotional distress. Specifically, in Leonardi's Administrative Claim that he submitted to the BOP, he does not mention emotional distress or conduct that was extreme and outrageous. Leonardi's claim solely focuses on inadequate medical care. Accordingly, I dismiss Leonardi's FTCA claim for intentional infliction of emotional distress without prejudice. *See Brownback v. King*, 592 U.S. 209, 217 (2021) (stating that "plaintiff must plausibly allege all jurisdictional elements" and, in the context of an FTCA claim, this includes all elements of a meritorious claim); *Durrani v. United States*, No. 3:07-CV-1238 (CFD), 2009 WL 211376, at *3 (D. Conn. Jan. 29, 2009) (dismissing plaintiff's FTCA claim because plaintiff failed to allege or provide exhibits to suggest that he timely exhausted his administrative remedies in regards to claim that conduct by former Assistant United States Attorney constituted tortious action).

## IV. CONCLUSION AND ORDERS

For the foregoing reasons, I conclude as follows:

(1) If Leonardi seeks to name the Warden of FCI Danbury as respondent and pursue relief from unconstitutional conditions of confinement through a petition under 28 U.S.C. § 2241, he shall file a notice with the Court on or before **November 26, 2026**.

(2) Leonardi may proceed to service on his Eighth Amendment claims for deliberate indifference to serious medical needs under *Bivens* against Dr. Robert Greene, Jr., and PA Werner Escobar in their individual capacities.

(3) Leonardi may proceed to service on his claims for injunctive relief for violations of the Eighth Amendment against Dr. Robert Greene, Jr. and PA Werner Escobar in their official capacities.

(4) Leonardi may proceed to service on his FTCA claim for medical malpractice against the United States.

(5) Leonardi's FTCA claim for intentional infliction of emotional distress is DISMISSED without prejudice.

(6) The Clerk shall effect service on Defendants Dr. Robert Greene, Jr. and PA Werner Escobar in their individual and official capacities. The Clerk shall mail a copy of the Complaint and a waiver of service of process request packet to Dr. Robert Greene, Jr. and PA Werner Escobar at FCI Danbury, 33 1/2 Pembroke Station, Route 37, Danbury, CT 06811, by **November 9, 2026**, and report to the Court on the status of the waiver request on the **thirty-fifth day** after mailing. If Defendants Dr. Greene or PA Escobar fail to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on Defendants Dr. Greene and PA Escobar in their individual capacities and they shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(7) The Clerk shall prepare the summons form and deliver one copy of the summons, Complaint, including attached exhibits, and this Initial Review Order to the United States Attorney for the District of Connecticut, at 157 Church Street, New Haven, CT 06510; and send one copy of the summons, Complaint, including attached exhibits, and this Initial Review Order by registered or certified mail to the Attorney General of the United States at 950 Pennsylvania Avenue, N.W., Washington, D.C. 20530.

(8) Once service has been effected upon all defendants, the Court will issue a Scheduling Order setting forth deadlines for Defendants to respond to the Complaint and for discovery.

(9) If Leonardi changes his address at any time during the litigation of this case, Local Court Rule 83.1(d) provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Leonardi must give notice of a new address even if he is incarcerated. Leonardi should write **PLEASE NOTE MY NEW ADDRESS** on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Leonardi has more than one pending case, he should indicate all the case numbers in the notification of change of address. Leonardi should also notify Defendants or counsel for Defendants of his new address.

(10) Leonardi shall utilize the Prisoner E-filing Program when filing documents with the Court. Leonardi is advised that the Program may be used only to file documents with the Court. Discovery requests shall not be filed with the Court, *see* D. Conn. L. Civ. R. 5(f), and must be served on Defendants' counsel by regular mail.

(11) The Clerk is directed to terminate Defendants Y. Joaquin and the Federal Bureau of Prisons from the case.

**SO ORDERED.**

New Haven, Connecticut
October 26, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge